**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANGEL LUIS SANTOS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-cv-03437-PBT |
| | ) | |
| **JOHN DELANEY,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW OF PLAINTIFF IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    FACTS ...................................................................................................................1

    A.    Inadequate Medical Care ................................................................................ 1

    B.    Incarceration in Dangerous, Uninhabitable Cell............................................ 2

    C.    Unjustified Use of Force and Destruction of Property by PDC Staff.................... 3

    D.    Physical Assault By Other Inmates at the Direction of PDC Staff........................ 5

    E.    The PDC's Grievance Procedures .......................................................... 5

    F.    Defendant's Knowledge of, and Deliberate Indifference to, Plaintiff's
        Grievances ....................................................................................................... 7

II.   LEGAL STANDARD...............................................................................................8

III.  ARGUMENT ...........................................................................................................8

    A.    Defendant Has Disregarded This Court's Policies and Procedures...................... 8

    B.    There Exists a Genuine Issue of Material Fact with Respect to Delaney's
        Deliberate Indifference to Santos's Mistreatment by the Guards. ........................ 9

        1.    Santos Has Presented Sufficient Evidence of a Substantial Risk of Serious
            Harm. .................................................................................................... 10

        2.    Santos Has Presented Sufficient Evidence of Delaney's Deliberate
            Indifference to the Risk of Serious Harm. ................................................. 12

        3.    Santos Has Presented Sufficient Evidence that Delaney's Deliberate
            Indifference Caused Santos Serious Harm. ............................................... 15

    C.    There Exists a Genuine Issue of Material Fact with Respect to Delaney's
        Deliberate Indifferent to Santos's Serious Medical Needs. ................................. 16

IV.   CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................8

*Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003) .......................................................17

*Bell v. Wolfish*, 441 U.S. 520 (1979) ..........................................................................9

*Burgos v. Phila. Prison Sys.*, 760 F. Supp. 2d 502 (E.D. Pa. 2011) ...........................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................8

*Douglas v. Hill*, No. 95-6497, 1996 U.S. Dist. LEXIS 18057 (E.D. Pa. Dec. 6,1996) ................18

*Estelle v. Gamble*, 429 U.S. 97 (1976) ......................................................................17

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..................................................................9

*Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000) .......................................................9

*Gayle v. Lamont*, No. 09-1290, 2013 U.S. Dist. LEXIS 3257 (E.D. Pa. Jan. 9, 2013) .......... 16-17

*Hamilton v. Leavy*, 117 F.3d 742 (3d Cir. 1997) .................................................. Passim

*Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347 (3d Cir. 2004)........................8

*Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005)........................................................9

*Jarrett v. Kovas*
   No. 94-5824, 1995 U.S. Dist. LEXIS 3527 (E.D. Pa. Mar. 20, 1995)........................10, 12, 15

*Lopez-Diaz v. Cnty. of Lancaster*, No. 01-CV-5181, 2003 U.S. Dist. LEXIS 4739 (E.D. Pa. Mar. 27, 2003)............................................................................................. 17-18

*Monmouth Cnty. Corr'l. Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987).........................17

*Pearson v. Vaughn*, 102 F. Supp. 2d 282 (E.D. Pa. 2000).......................................10, 13

*Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999)........................................................17

*Talley v. Amarker*
   No. 95-7284, 1996 U.S. Dist. LEXIS 16823 (E.D. Pa. Nov. 15, 1996) ....................12, 14, 18

*White v. Ottinger*, 442 F. Supp. 2d 236 (E.D. Pa. 2006) ..........................................8

*Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992) ......................................................12

ii

**Rules**

Fed. R. Civ. P. 56(c) ..........................................................................................8

**Constitutional Provisions**

U.S. Const. amend. VIII........................................................................... 9, 16-17

U.S. Const. amend. XIV ...............................................................................9

**MEMORANDUM OF LAW OF PLAINTIFF IN OPPOSITION
<u>TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Angel Luis Santos ("Plaintiff" or "Santos"), by and through his attorneys, Duane

Morris LLP, respectfully submits the following Memorandum of Law in Opposition to the

Motion for Summary Judgment of Defendant John Delaney ("Defendant" or "Delaney").  There

are several genuine issues of material fact in this case that must be resolved by a jury.  For the

reasons that follow, Santos respectfully requests that the Court deny Delaney's Motion for

Summary Judgment.

**I.      FACTS[1]**

From June 2007 to September 2007, Santos was a pre-trial detainee at the Philadelphia

Detention Center ("PDC").  Dkt. 73, ¶ 6.  At all times during his detention at the PDC, Santos

was in the custody of Defendant Delaney, warden of the PDC.  *Id*., ¶ 3.  During his brief

confinement at the PDC, Plaintiff was subjected to constant, ever-escalating mistreatment at the

hands of Delaney's staff, as described below.

**A.      Inadequate Medical Care**

On July 13, 2007, Plaintiff was climbing into the top-level bunk in his cell at the PDC

when he slipped and fell; during this fall, Plaintiff was stuck and hung upside down for a

substantial period of time, causing injury and pain to his right leg.  Declaration of Angel L.

Santos ("Santos Decl."), ¶¶ 12-13.  Following this injury, Plaintiff was taken to Frankford

Hospital, examined and returned to the PDC.  *Id*., ¶¶ 14-15.  Upon his return to the PDC,

---

[1] Contrary to this Court's Policies and Procedures, Defendant did not include "a short and concise Statement of Stipulated Material Facts[,]" a filing which is mandatory for a defendant using the Court's short-form summary judgment procedure.  Policies and Procedures at 4 ("The initial filing of the moving party <u>must</u> include a short and concise Statement of Stipulated Material Facts which sets forth, in numbered paragraphs, the material facts that the parties agree are not in dispute." (emphasis in original)).

Plaintiff's leg was extremely swollen and painful, injuries which were exacerbated by Plaintiff being once again placed in a cell with a top-level bunk. *Id.*, ¶¶ 15-16.

During this time, Plaintiff constantly submitted grievances, complaints and sick call requests to Defendant's staff asking for treatment of his injury. Santos Decl., ¶ 17; *id.*, Exs. A-C, E-G, L-M, Q-U, W-Z. Notwithstanding this stream of submissions to PDC staff, the only treatment Santos received for two weeks was ice, which did little to alleviate the swelling and pain he suffered. *Id.*, ¶ 17. Plaintiff's understanding was that this lack of treatment was caused by the failure of PDC staff to obtain from records from Frankford Hospital in a timely fashion. *Id.*, ¶ 18.

After Plaintiff's condition continued to deteriorate, he was again taken to Frankford Hospital, where he was prescribed medication and given crutches and a leg immobilizer and returned to the PDC. Santos Decl., ¶ 19. Plaintiff's pain and suffering continued, however; a member of the PDC's medical staff prescribed him a sock or leg wrap in order to improve blood flow and reduce swelling, but one was never provided despite his requests. *Id.*, ¶ 20; *id.*, Exs. C, T, U. Moreover, notwithstanding Plaintiff's requests, no other medical staff or specialists were called in to examine his leg injury. *Id.*, ¶ 21. Plaintiff continues to feel pain and swelling in his leg even today. *Id.*, ¶ 22.

### B.      Incarceration in Dangerous, Uninhabitable Cell

From August 2 to August 8, 2007, Plaintiff was on a hunger strike to protest the conditions of his confinement including, but not limited to, the lack of adequate medical treatment cited above. Santos Decl., ¶ 23. On August 8, 2007, Plaintiff was returned from medical to a cell on B-Block, Cell 209; at this time, Plaintiff noticed that the cell was extremely hot, as the temperature that day either approached or exceeded 90 degrees Fahrenheit. *Id.*, ¶¶ 25-26. Plaintiff then attempted to open the window, the only source of ventilation in the cell, only

2

to learn that the window was inoperable. *Id.*, ¶ 27. Plaintiff immediately brought the condition of the window to the attention of the guard who brought him to the cell, but the guard did not respond or attempt to remedy the issue. *Id.*, ¶ 28.

For the remainder of the day, Plaintiff attempted to inform any guard who passed within earshot that his cell was extremely hot and that the heat was causing him physical distress, but not a single one responded. Santos Decl., ¶ 29. Plaintiff's distress was so obvious that other inmates in cells located close to Plaintiff also requested that the guards intervene to assist him. Again, none did. *Id.*, ¶ 30. By that evening, the heat had so sickened Plaintiff that he needed to lay on the floor of his cell to ward off nausea and dizziness. *Id.*, ¶ 31. Plaintiff was left to lie in a puddle of water on the floor of his cell for the entire night of August 8 and most the next day. *Id.*, ¶ 32.

Ultimately, it was not until approximately 5 p.m. that Sergeant Tucker informed Plaintiff that he would be taken to medical after dinner; at that time, Sergeant Tucker ordered the guards to immediately remove Plaintiff from his cell and locate a cell with an operable window. Santos Decl., ¶ 33. Plaintiff was later housed from August 17 to August 24 in the same cell, Cell B-209, during which time the window had been repaired, which demonstrates that PDC was aware of the broken window. *Id.*, ¶ 34.

### C.     Unjustified Use of Force and Destruction of Property by PDC Staff

After being moved from Cell B-209 on August 9, 2007, Plaintiff was placed in Cell B-206, which he was told was used for inmates in administrative segregation. Santos Decl., ¶ 35. Plaintiff was not in administrative segregation at the time, nor did he have any charges pending against him. *Id.*, ¶ 36; Declaration of Brian J. Slipakoff ("Slipakoff Decl."), Ex. D. At the time he was moved to Cell B-206, Plaintiff was directed to change into an orange jumpsuit, the color jumpsuit of an inmate in administrative segregation. Santos Decl., ¶ 37. At the time, Plaintiff

3

told the guard that he was not supposed to be in administrative segregation and asked the guard to confirm the same with his supervisor, which the guard promised to do. *Id.*, ¶ 38. For the rest of the week, Plaintiff was treated as if he had been placed in administrative segregation, and thereby denied privileges to which he was entitled such as commissary, phone usage, and outside recreation time. *Id.*, ¶ 39. During this time, Plaintiff asked any guards he could locate to speak with their supervisor to confirm this mistake; none did, and no supervisor never appeared. *Id.*

On August 16, 2007, Plaintiff was let out of his cell, but then immediately told to return because he was supposedly in administrative segregation and could not participate in commissary. Santos Decl., ¶ 40. At this time Plaintiff informed the two guards on the cell block, Bradley and Brown, that Plaintiff had been requesting a supervisor for the entire week to come and speak with Plaintiff about his unwarranted placement in administrative segregation, and had been ignored that whole time. *Id.* Bradley ignored Plaintiff's request and told him to get back in his cell or he would "hit me with this hot shit," *i.e.*, pepper spray. *Id.* After Plaintiff again requested the chance to speak with a supervisor, Brown grabbed his crutches out from under him (as noted, Plaintiff was on crutches due to his leg injury in early July) and Bradley took off his glasses, threw them on the floor and sprayed him in the face with pepper spray. Bradley also used his fingers to rub pepper spray in Plaintiff's eyes. *Id.* After incapacitating him in this way, both guards roughly pushed Plaintiff down the stairs, causing him pain in his injured leg, and returned him to his, where he was shoved into his bunk, again causing pain in his leg. *Id.* Contrary to PDC staff's assertions, at no time during this encounter did Plaintiff raise his crutches or attempt to attack or assault any PDC staff. *Id.*, ¶ 41. During this encounter Plaintiff's eyeglasses were irreparably broken. *Id.*, ¶ 42. In addition to the pain resulting from

being assaulted, pepper-sprayed, then manhandled on a badly injured leg, Plaintiff also suffered

nightmares for several weeks thereafter. *Id.*, ¶ 43.

### D.     Physical Assault By Other Inmates at the Direction of PDC Staff

On August 17, 2007, Plaintiff was moved back into Cell B-209. Santos Decl., ¶ 44. At

that time, one of the guards (whom Plaintiff believes to have been Brown) escorted another

inmate housed on B-Block near Plaintiff's cell. *Id.*, ¶ 45. Brown removed the inmate's

handcuffs, and the inmate approached Plaintiff's cell and asked to speak with Plaintiff. *Id.*

Once he approached the door, the inmate punched Plaintiff in the face through the window in the

cell door. *Id.* After doing so, the inmate said, "that's for my boy," which Plaintiff understood to

be a reference to either Brown (who brought the inmate to Plaintiff's cell) or Bradley (who

released the inmate from his cell). *Id.* After punching Plaintiff in the face in full view of Brown,

the inmate was re-handcuffed by Brown, escorted off of B-Block by Bradley. *Id.*, ¶ 46. Even

though Plaintiff immediately notified Sergeant Adams of the incident, he does not believe that

this inmate was ever subjected to any disciplinary action. *Id.*, ¶ 47.

### E.     The PDC's Grievance Procedures

During Plaintiff's incarceration at the PDC, he submitted numerous written grievances

and complaints to the PDC staff concerning the above-described conditions confinement and

mistreatment at the hands of PDC guards. Santos Decl., ¶¶ 4, 11; *id.*, Exs. A-P, T-W, Y, AA-

BB. Pursuant to those procedures, a grievance would be submitted by an inmate into a locked

box on the cellblock. Delaney Dep., 10:14-18, Aug. 14, 2013 (Exhibit A to the Slipakoff

Declaration); Christmas Dep., 48:8-9, Aug. 14, 2013 (Exhibit B to the Slipakoff Declaration).

The grievance would then be picked up by the lieutenant or one of the officers assigned to the

deputy warden of administration, and brought to the deputy warden's office for review. Delaney

Dep., 10:24-11:1-2, 11:12-20. Assuming the grievance did not contain offensive language or

multiple topics, the grievance would be accepted and entered into the Lock & Track system for tracking and resolution. *Id.* at 12:9-22; Christmas Dep., 38:17-22. The deputy warden would then assign the grievance to the proper department for resolution. Delaney Dep., 12:23-24-13:1-3. Within 30 days, the department tasked with responding to the grievance would report its resolution to the deputy warden for review. *Id.* at 13:7-12; Christmas Dep., 49:19-23. The deputy warden would give his/her own statement regarding the resolution of the grievance, and then send the resolution to the warden for review. *Id.* 49:21-23. The warden would review the grievance resolution to ensure that the resolution was proper, and, if so, would sign off on it. Delaney Dep., 14:1-4. Finally, the resolution would be logged in the Lock & Track system, and the inmate would be called into the Warden's office to discuss the resolution of his grievance and sign paperwork documenting the same. *Id.* at 13:17-21. If the inmate disagreed with the grievance resolution, he could appeal the decision to the Deputy Commissioner of the Philadelphia Prison System and, ultimately, the Commissioner. *Id.* at 14:8-13.

All grievances submitted according to this procedure and accepted by the PDC were to be resolved according to the PDC's grievance resolution procedures. Christmas Dep., 47:12-16 (admitting that, if a grievance did not cover multiple issues or have offensive language in it, it would be entered into the Lock & Track system); Delaney Dep.. 26:18-23 (confirming that, "if a grievance was received, then it should have either been entered into Lock & Track or returned to the inmate"); Powers Dep., 108:41-5, Mar. 7, 2013 (Exhibit C to the Slipakoff Declaration) (explaining that, once a grievance is received and collected by the deputy warden of administration, "[i]t's assigned a number in the [Lock & Track] system"); *id.* at 134:10-16 (admitting that "there should be, in Lock & Track, a note of every grievance filed by an inmate"). This was true not only for grievances submitted on official grievance forms, but also

grievable issues identified on other forms (such as Requests to Staff).  Christmas Dep., 97:9-19; Delaney Dep., 21:8-21 (confirming that, if a Request to Staff made complaints that were really of a grievance nature, it would be put in the Lock & Track system and resolved in accordance with the grievance resolution process).

**F.      Defendant's Knowledge of, and Deliberate Indifference to, Plaintiff's Grievances**

Each of the grievances and complaints attached to this Declaration as Exhibits A-P, T-W, Y, AA-BB were submitted to the PDC staff through the procedure noted above.  Santos Decl., ¶ 5.  None of Plaintiff's grievances or Requests to Staff raising grievable issues were returned to him for revision by PDC staff, see Santos Decl., ¶ 6; accordingly, all of them were subject to the PDC's grievance resolution process.

As noted, pursuant to that process, Defendant would have reviewed all of Plaintiff's grievances to ensure they were properly resolved.  Delaney Dep., 13:22-14:4 (admitting that he would "review [grievance resolutions] to ensure that the resolution was the proper resolution"); id. at 19:8-12 (admitting that, if an inmate filed a medical grievance, "[a]fter it was resolved I would sign off on it"); Powers Dep., 110:17-19 (admitting that "in all cases the warden will see a grievance").  Thus Delaney should have seen each and every one of the 12 Inmate Grievance forms and 11 Request to Staff forms submitted by Santos during his three months at the PDC. Santos Decl., Exs. C, G, H, J, K, L, O, T, U, W, AA, and BB (Inmate Grievance forms); id., Exs. A, B, D, E, F, I, M, N, P, V, and Y (Request to Staff).  As Delaney admitted, this was unusually large volume of grievances over such a short period.  Delaney Dep., 17:21-23.

Notwithstanding this veritable avalanche of complaints, Delaney never took any action to resolve Santos' grievances, improve his situation or prevent further mistreatment from occurring. At no time after Santos submitted any of the referenced grievances and complaints was Santos

(a) informed that any of those grievances and complaints had been addressed or resolved; (b) called to Warden Delaney's office to review with him any resolution of those grievances and complaints; (c) asked to sign any form acknowledging receipt of Defendant's resolution of those grievances and complaints; or (d) informed that he had the right to appeal any resolution of his grievances to the Commissioner of the Philadelphia Prison System.  Santos Decl., ¶¶ 7-10.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), a court should grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *White v. Ottinger*, 442 F. Supp. 2d 236, 242 (E.D. Pa. 2006) (citing  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The party moving for summary judgment bears the initial burden of demonstrating that there are no facts supporting the nonmoving party's legal position.  *Id.*  Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Id.*  When deciding a motion for summary judgment, a court must "draw all reasonable inferences in favor of the nonmoving party."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir. 2004)).  If reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.  *Id.*

## III.   ARGUMENT

### A.     Defendant Has Disregarded This Court's Policies and Procedures

As noted above, this Court's Policies and Procedures require Defendant to include "a short and concise Statement of Stipulated Material Facts" when filing a short-form motion for

summary judgment.  Above, n.1.  Defendant did not do so.  As such, his Motion should be denied for failure to comply with the Court's Policies and Procedures.

### B. There Exists a Genuine Issue of Material Fact with Respect to Delaney's Deliberate Indifference to Santos's Mistreatment by the Guards.

Delaney's Motion for Summary Judgment should be denied because there exists a genuine issue of material fact as to whether Delaney had knowledge of a substantial risk to Santos of serious mistreatment at the hands of the guards, but was deliberately indifferent to that risk.  The Eighth Amendment imposes certain duties on prison officials, who are required to provide inmates with "humane conditions of confinement."[2]  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular, the Eighth Amendment requires that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [ ] take reasonable measures to guarantee the safety of the inmates."  *Id.*; *id.* at 844 (explaining that a prison official's duty under the Eighth Amendment includes the duty "to ensure reasonable safety"). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Id.* at 828; *Hamilton v. Leavy*, 117 F.3d 742, 748 (3d Cir. 1997) (same).

To survive a summary judgment motion on a failure to protect from harm claim, an inmate must show sufficient evidence of "(1) a substantial risk of serious harm; (2) the

---

[2] Because Santos was a pretrial detainee while in the custody of Defendant Delaney, he has no rights under the 8th Amendment.  *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'" (citation omitted)).  Nonetheless, it is well-established that, under the Constitution's guarantees of due process, an unsentenced inmate "is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment."  *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).  Thus, a pretrial detainee may assert a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment.  *Burgos v. Phila. Prison Sys.*, 760 F. Supp. 2d 502, 507 (E.D. Pa. 2011) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

defendants' deliberate indifference to that risk; and (3) causation." *Pearson v. Vaughn*, 102 F. Supp. 2d 282, 290 (E.D. Pa. 2000). Because Santos has offered sufficient evidence as to each of these elements, Delaney's Motion for Summary Judgment should be denied.

### 1.   Santos Has Presented Sufficient Evidence of a Substantial Risk of Serious Harm.

A plaintiff can show a substantial risk of serious harm by presenting evidence that he endured a pattern of serious mistreatment or faced a threat of physical assault. *See, e.g.,* *Hamilton*, 117 F.3d at 747 (finding that plaintiff presented sufficient evidence of a substantial risk of harm where plaintiff pointed to a long history of being assaulted in the prison system, plaintiff requested to be placed in protective custody, and a committee recommended he be placed in protective custody); *Pearson*, 102 F. Supp. 2d at 290-91 (finding that plaintiff presented sufficient evidence that he faced a substantial risk of serious harm where plaintiff was previously assaulted, told unit manager about prior assault, unit manager testified that he would have placed plaintiff in administrative custody if he had asked him to do so, and plaintiff testified that security officials told plaintiff that he should not have been housed in the general population because of prior attack); *Jarrett v. Kovas*, No. 94-5824, 1995 U.S. Dist. LEXIS 3527, at *4 (E.D. Pa. Mar. 20, 1995) (finding sufficient evidence of a substantial risk of harm where plaintiff presented evidence that a fellow inmate threatened to stab and kill plaintiff).

Here, Santos has presented evidence that he suffered a series of serious, escalating mistreatment at the hands of the guards, and thus faced a growing, substantial risk of ongoing harm. Santos has presented evidence that PDC guards subjected him to dangerous and hazardous cell conditions, disregarded his medical needs, and actively ignored his repeated, constant requests that these deprivations be remedied. *See* Santos Decl., ¶¶ 12-34. These complaints were documented in numerous contemporaneous grievances submitted to the PDC

for Defendant's ultimate consideration.  *Id.*, Exs. A, B, C, D, E, F, G, H, J, L, M, T, U, W, Y

(grievances regarding unmet medical needs)[3]; *Id.*, Exs. A, B, C, D, E, G, H, I, J, W (grievances

regarding poor cell conditions)[4]; *Id.*, Exs. O, P, W, AA, BB (grievances regarding unlawful

administrative segregation)[5].

These numerous grievances regarding his cell conditions and access to adequate medical

care provide evidence of the guards' serious, ongoing neglect and mistreatment of Santos during

his time at the PDC.  Moreover, the conditions speak to an obvious and escalating animus

directed at Plaintiff by PDC guards.  While initially the deprivations directed at Plaintiff may

have seemed relatively minor,[6] in the span of approximately a month they had grown to

extremely serious mistreatment, including confinement in an overheated, unventilated cell, then

---

[3] *See, e.g.,* Ex. U (7/25) (noting that his "sick call slips go unanswered," and stating that the "pain in my lower (R) back is unbearable," "injury to my back has been neglected since 7-13-07," and "sharp pain run up cord in my spine, need checked").  When questioned about an inmate with the number of medical complaints logged by Santos about, among other things, inadequate treatment of his leg injury, Delaney testified that "it would be automatic:  I would have the inmate immediately escorted to medical for an evaluation.  And I would expect a report in my office within the hour regarding his condition."  Delaney Dep.*,* 52:18-53:5.

[4] *See, e.g.,* Ex. B (7/14) (noting that he was "placed in a cell with no ventilation . . . the wall vents are full of rat piss and crap that is in the halls, walls . . . [there are] no fire extinguishers . . . [,] no fire sprinklers . . . [and] no hot water in cell").

[5] *See, e.g.,* Ex. O (8/14) (explaining that he was put "in a[n] orange jumper in a cell set aside for inmates who are to be disciplined," but that "no C/O will ever bother to call any on[e] as to my status").

[6] *See, e.g.,* Santos Decl., Ex. L (7/15) (noting that he had not been "properly given a chance to make a phone call in the past four (4) days," and requesting an MRI for "right knee or leg"); *Id.*, Ex. C (7/24) (stating that he would hunger strike until he was provided a shower, response to basic sick calls, phone privileges, visits to administration, law library access).

assaults from PDC staff and inmates at the direction of PDC staff.[7]  Santos Decl.,¶¶ 35-47.  Thus Santos has raised a genuine issue of material fact as to whether he faced a substantial risk of continuing and escalating harm at the hands of PDC guards.

> **2.     Santos Has Presented Sufficient Evidence of Delaney's Deliberate Indifference to the Risk of Serious Harm.**

Santos has also presented sufficient evidence that Delaney was deliberately indifferent to the risk that Santos would be seriously mistreated by the guards.  To overcome a motion for summary judgment on a deliberate indifference claim, a plaintiff must offer evidence that the official was "subjectively aware of the risk" of serious harm to the plaintiff, and disregarded that risk by failing to take reasonable measures to abate it.  *Jarrett*, 1995 U.S. Dist. LEXIS 3527, at *3-4.  Because this inquiry requires an assessment of the prison official's "intent or state of mind," and such issues "should generally not be resolved by a motion for summary judgment," Santos should be permitted to prove at trial whether Delaney was deliberately indifferent to the substantial risk of serious harm which Santos faced.  *See id.* at *4 (citing *Young v. Quinlan*, 960 F.2d 351, 360 n.21 (3d Cir. 1992)); *Hamilton*, 117 F.3d at 747 ("A prison official's knowledge of a substantial risk is a question of fact . . . .").

While this is an issue to be addressed at trial, Delaney's deliberate indifference is evident at this stage.  A prison official's deliberate indifference to a substantial risk of serious harm to an inmate can be established in several ways.  For example, where an inmate files numerous grievances or repeatedly notifies a prison official about a particular harm, which the prison official reviews but does not act upon, the inmate has raised sufficient evidence of the official's deliberate indifference to that harm.  *See, e.g., Talley v. Amarker*, No. 95-7284, 1996 U.S. Dist.

---

[7] Recall, as noted above, that Delaney concedes the volume of grievances filed by Plaintiff was unusually large.  Delaney Dep., 17:21-23.

LEXIS 16823, at *8-9 (E.D. Pa. Nov. 15, 1996) (denying defendant warden's motion for summary judgment where plaintiff presented evidence that he filed numerous grievances indicating his concerns regarding improper medical treatment, and his medical problems persisted); *Pearson*, 102 F. Supp. 2d at 291 (denying defendant prison unit manager's motion for summary judgment where plaintiff presented evidence that he informed defendant, at least twice, of a prior assault when housed in general population and that he was concerned for his safety, and requested that he be placed in administrative custody, but defendant failed to so place him). Similarly, where there is evidence that a prison official is aware of a history of mistreatment and the official fails to prevent further mistreatment, there is sufficient evidence to maintain a deliberate indifference claim. *See, e.g., Hamilton*, 117 F.3d at 747-48 (reversing grant of summary judgment where prisoner had long history of being assaulted in the prison system, and defendant received a recommendation that prisoner be placed in protective custody, but did not place prisoner in protective custody).

Here, there is sufficient evidence of Delaney's deliberate indifference to a substantial risk that Santos would be subjected to serious mistreatment by his guards to withstand Delaney's Motion for Summary Judgment. Specifically, Delaney's indifference to the risk of serious mistreatment is evidenced by the numerous grievances Santos submitted, which Delaney admits he would have seen, but upon which Delaney failed to act.

It is undisputed that Santos filed numerous grievances concerning his mistreatment at the hands of Delaney's guards. *See* Santos Decl., ¶¶ 4-5; *id.*, Exs. C, G, H, J, K, L, O, T, U, W, AA, and BB (Inmate Grievance Forms), and Exs. A, B, D, E, F, I, M, N, P, V, and Y (Requests to Staff). As the PDC's designee testified, all medical or general grievances that were not returned to the inmate for revision—and the only record evidence is that none were returned to Santos,

13

Santos Decl., ¶ 6—would have been logged, resolved and reviewed by Defendant.  Christmas

Dep., 47:12-16 (admitting that, if a grievance did not cover multiple issues or have offensive

language in it, it would be entered into the Lock & Track system); *see* Delaney Dep. 26:18-23

(confirming that, "if a grievance was received, then it should have either been entered into Lock

& Track or returned to the inmate"); Powers Dep., 108:41-5, Mar. 7, 2013 (explaining that, once

a grievance is received and collected by the deputy warden of administration, "[i]t's assigned a

number in the [Lock & Track] system"); *id.* at 134:10-16 (admitting that "there should be, in

Lock & Track, a note of every grievance filed by an inmate").

      Delaney explained that part of his duties was to "review [grievance resolutions] to ensure

that the resolution was the proper resolution[.]"  Delaney Dep., 13:22-14:4; *see id.* at 19:8-12

(admitting that, if an inmate filed a medical grievance, "[a]fter it was resolved I would sign off

on it"); Powers Dep., 110:17-19 (admitting that "in all cases the warden will see a grievance").

Thus, by his own admission, and prison policy, Delaney should have seen and reviewed at least

12, and as many as 23, grievances from Santos.  Yet, despite having knowledge of Santos's

grievances, Delaney did nothing to prevent further mistreatment from occurring.  *See* Santos

Decl., ¶¶ 7-10.  Because Santos has presented evidence that Delaney had knowledge of this

history of serious mistreatment, but did nothing to prevent further mistreatment, Delaney's

Motion for Summary Judgment should be denied.  *See Talley*, 1996 U.S. Dist. LEXIS 16823, at

*8-9 (denying defendant warden's motion for summary judgment where plaintiff presented

evidence that he filed numerous grievances indicating his concerns regarding improper medical

treatment, and his problems persisted).

### 3. Santos Has Presented Sufficient Evidence that Delaney's Deliberate Indifference Caused Santos Serious Harm.

Finally, Santos has offered sufficient evidence that he was seriously harmed as a result of Delaney's deliberate indifference to the risk of harm that faced him. Evidence that an inmate was injured after a prison official's failure to take action, in spite of a known risk of harm, raises a genuine issue of material fact as to whether the official's failure to act caused the harm suffered. *See, e.g., Hamilton*, 117 F.3d at 742 (concluding that summary judgment was improper where plaintiff was injured during an assault by another prisoner less than two months after prison official decided not to place plaintiff in protective custody); *Jarrett*, 1995 U.S. Dist. LEXIS 3527, at *4-6 (denying motion for summary judgment where plaintiff presented evidence that he was attacked and injured by another prisoner after official allegedly heard threat, but failed to inform other officials that plaintiff and prisoner should be kept separate).

Here, Santos has presented evidence that he was subjected to serious mistreatment at the hands of the guards after Delaney's disregard the risk that such harm would come to Santos. First, on August 16, 2007, Santos was denied access to the commissary at the PDC without any legitimate justification. Santos Decl., ¶ 40. When Santos objected to this action, he was pepper-sprayed and his glasses were intentionally and maliciously broken. *Id.* at ¶¶ 40-43 (describing pepper spray incident and resulting injuries); *Id.*, Ex. AA (8/16) ("I'm hunger stri[]king because of the unprofessionalism of the C/O's on B Block (Brown and Bradley). . . . Today when I was refused my commissary as a lock in with no traceable, verifiable or accurate paper work to support the denial of my commissary, I was pep[p]er spra[yed] and my $265 eye glasses w[e]re purposely and maliciously broken.").

Two days later, Santos was subjected to further physical assault at the direction of Delaney's staff. *See* Santos Decl., Ex. K (8/18) ("Today, they [C/Os] made several inmates

approach me with verbal threats of bodily harm and at one point after lunch, they releas[ed] the lock ins and the inmate from 2- - came up to me in an orange jumpsu[i]t, had no cuffs on and punched me in my left eye for [illegible] the C/Os the day before, went and got his hand cuffs placed."); *Id.*, ¶¶ 45-47 (describing assault by other inmate at direction of Officer Brown). These assaults caused Santos physical injury, mental anguish, and the loss of his eyeglasses. *Id.* at ¶¶ 40, 42-43, 45.

As shown above, Santos was at risk for, and was ultimately subjected to, serious mistreatment as a result of Delaney's deliberate indifference. Delaney was made aware of the wrongs being committed against Santos, as well as their increasing seriousness, but failed to intervene or to prevent further harm. Santos was the victim of an unlawful use of force on August 16, 2007, and was attacked by another inmate at the behest of Delaney's guards on August 18, 2007. At a minimum, this evidence creates a genuine issue of material fact as to whether Santos suffered the infliction of serious harm as a consequence of Delaney's deliberate indifference to the campaign of mistreatment against Santos. Accordingly, Delaney's Motion for Summary Judgment should be denied, and Santos should be permitted to proceed to a trial on the merits of his claim.

### C.   There Exists a Genuine Issue of Material Fact with Respect to Delaney's Deliberate Indifferent to Santos's Serious Medical Needs.

Delaney's Motion for Summary Judgment should further be denied because there exists a genuine issue of material fact as to whether Delaney was deliberately indifferent to the serious medical needs of Santos. To establish an Eighth Amendment inadequate medical care claim, a plaintiff must demonstrate that "(1) he suffered from 'serious medical needs' and (2) the defendant[] acted or failed to act in a manner exhibiting deliberate indifference to those medical needs." *Gayle v. Lamont*, No. 09-1290, 2013 U.S. Dist. LEXIS 3257, at *39 (E.D. Pa. Jan. 9,

16

2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

A serious medical need is one that "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citing *Monmouth Cnty. Corr'l. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). The Third Circuit has found that "[n]eedless suffering resulting from a denial of simple medical care" is also sufficiently serious to state a claim under the Eighth Amendment. *Id.* at *40 (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)). *See also Lopez-Diaz v. Cnty. of Lancaster*, No. 01-CV-5181, 2003 U.S. Dist. LEXIS 4739, at *15 (E.D. Pa. Mar. 27, 2003) ("[N]eedless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment.").

Deliberate indifference to a serious medical need has been found where the prison official "(1) knew of a prisoner's need for medical treatment and intentionally refused to provide it; (2) delayed necessary medical treatment for a non-medical reason; or (3) prevented a prisoner from receiving needed or recommended medical treatment." *Gayle*, 2013 U.S. Dist. LEXIS 3257, at *41 (citing *Rouse*, 182 F.3d at 197). *See also Lopez-Diaz*, 2003 U.S. Dist. LEXIS 4739, at *14 ("Where prison authorities unduly delay or deny reasonable requests for medical treatment resulting in unnecessary and wanton infliction of pain or the threat of tangible residual injury constitutes deliberate indifference."). *See, e.g., Gayle*, 2013 U.S. Dist. LEXIS 3257, at *40-45 (denying defendant prison officials' motion for summary judgment where plaintiff presented evidence that he notified defendants of his back pain, repeatedly requested that the medical department be contacted, and that one defendant saw him lying on the floor of his cell in pain);

*Douglas v. Hill*, No. 95-6497, 1996 U.S. Dist. LEXIS 18057, at *28-30 (E.D. Pa. Dec. 6,1996)

(denying motion for summary judgment of defendants, deputy warden and warden, where

plaintiff offered evidence that he submitted several medical grievances to defendants regarding

his need for surgery, but these requests went unanswered); *Talley*, 1996 U.S. Dist. LEXIS 16823,

at *8-9 (denying defendant warden's motion for summary judgment where plaintiff noted that he

filed numerous grievances indicating that he was not receiving his medically-prescribed diet, but

the problem continued for a period of more than three months). *See also Lopez-Diaz*, 2003 U.S.

Dist. LEXIS 4739, at *15-16 (denying defendants prison officials' motion to dismiss where

plaintiff submitted five or six official requests to get medical attention for serious rash, wrote

defendant-warden to request medical attention and made oral requests to the guards).

 Here, there is substantial evidence that Delaney acted in a manner exhibiting deliberate

indifference to Santos's serious medical needs, and that, as a result, Santos endured needless

suffering from the denial of medical care.  Santos had ongoing mental and physical problems

arising from a June 29, 2007 inmate attack at CFCF, and Santos submitted medical grievances

and sick call requests in an attempt to have these problems addressed.  *See, e.g.,* Santos Decl.,

Ex. B. (7/14) (describing "very limited [medical] treatment" received after the attack).

 Santos suffered additional injuries after falling from his bunk bed on July 13, 2007, and

submitted frequent grievances requesting medical attention related to those injuries.  *See, e.g.,*

*id.*, Ex. Q (7/16) (describing injuries and requesting examination of leg, lower back and

shoulder); Ex. B (7/14) (noting that he was denied ice for his prescribed ice bath, and denied

"meds for swelling . . [and] pain med also"); Ex. L (7/15) (requesting MRI or CAT scan for right

leg or knee); Ex. T (7/25) (noting that he would hunger strike because he had not received the

pulmonary stocking for his leg, had yet to have "anyone treat me for my back [i]njury from 7-13-

07," despite suffering "[m]uch pain and muscle spasms," and did not get an ultrasound of his ankle); Ex. U (7/25) (noting that his "sick call slips go unanswered," and stating that the "pain in my lower (R) back is unbearable," "injury to my back has been neglected since 7-13-07," and "sharp pain run up cord in my spine, need checked"); Ex. C (7/25) (stating that his hunger strike would continue "until proper medical care is provided . . . [u]ntil basic sick calls are answered . . . [u]ntil I get treatment for my back"); Ex. E (7/26) (noting a "13 day run without proper medical treatment"); Ex. G (8/9); Ex. W (8/14) (noting that his injuries were still not resolved); Ex. Y (8/16) (stating that "all of my human rights to adequate care (health) and (medical) are being trampled under foot as meaningless"). *See also id.* at ¶¶ 12-22 (describing injury to leg and back as a result of falling from bunk bed, and repeated, unanswered requests for medical attention).

Delaney admitted that he would have reviewed each of these medical grievances. Delaney Dep., 19:8-12 (admitting that, if an inmate filed a medical grievance, "[a]fter it was resolved I would sign off on it"). In spite of Santos's numerous requests to Delaney, he was not provided the basic follow-up care necessary to treat his injuries, and, as a result, suffered and continues to suffer lingering and debilitating effects of his injury. Santos Decl., ¶ 22. Accordingly, because disputed issues of fact exist regarding Delaney's deliberate indifference to Santos's medical needs, Delaney's Motion for Summary Judgment should be denied.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff, Angel Luis Santos, respectfully requests that this

Honorable Court deny the Motion for Summary Judgment of Defendant John Delaney.


Dated:   October 14, 2013                              /s Brian J. Slipakoff
                                                       Brian J. Slipakoff
                                                       Pa. I.D. No. 91850
                                                       Duane Morris LLP
                                                       30 South 17th Street
                                                       (215) 979-1000

                                                       *Attorneys for Plaintiff, Angel Luis Santos*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 14, 2013, he caused the attached document to be served via the Court's ECF system.


s/ Brian J. Slipakoff